IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 11, 2017

## PAUL RICHARDSON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 05-03372        Glenn Ivy Wright, Judge**

_____

### No. W2016-02189-CCA-R3-PC
_____

The petitioner, Paul Richardson, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received effective assistance of counsel at trial. After our review of the record, briefs, and applicable law, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Robert Brooks (on appeal) and Eric Mogy (at hearing), Memphis, Tennessee, for the appellant, Paul Richardson.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Charles Summers, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### FACTS

For the petitioner's participation in a home invasion on December 24, 2003, a Shelby County jury convicted him of aggravated robbery, aggravated burglary, aggravated assault, and unlawful possession of a handgun by a convicted felon. The trial court imposed consecutive sentences for the aggravated robbery and aggravated assault convictions, and ran the remaining sentences concurrently to one another, for an effective thirty-nine year sentence. The petitioner appealed. On direct appeal, this Court affirmed the convictions for aggravated robbery, aggravated burglary, and unlawful possession of

a handgun by a convicted felon, but reversed and vacated the aggravated assault conviction, determining the jury was charged with different elements of aggravated assault than those in the indictment. *State v. Paul Richardson*, No. W2008-02506-CCA-R3-CD, 2010 WL 3791973, at *10-11 (Tenn. Crim. App. Sept. 29, 2010) *perm. app. denied* (Tenn. March 9, 2011). Upon remand, the trial court imposed consecutive sentences to the petitioner's three remaining convictions, resulting in an effective forty-one-year sentence. The petitioner again appealed, challenging the trial court's imposition of consecutive sentencing.

On the second appeal, this Court summarized the factual and procedural history of the petitioner's case as follows:

At approximately 10:00 p.m. on Christmas Eve, the [petitioner] and another man, who were both dressed in black and wearing bullet-proof vests, entered a home at which several women and over a dozen children were gathered. The [petitioner] wore a badge or camera around his neck, causing some of the occupants to initially believe the men were police officers. The women were having their hair done by Jenell Allen, who lived in the home and ran a salon from a back laundry room. The [petitioner] and the other man, who were armed with a handgun and rifle respectively, entered through the unlocked screen door and began asking for "the money," "the weed," and "J-Mack," which was a moniker shared by Ms. Allen's husband and an individual who lived across the street. When the women back in the "hair room" proved unable to produce J-Mack or "the weed," the [petitioner] proceeded to rob them. Ms. Allen gave the [petitioner] between one and two hundred dollars after he pointed the gun at her and threatened to kill her. The [petitioner] also pointed the gun at and demanded money from Lynette Johnson, who had no money with her. The [petitioner] then robbed and assaulted Pandora Powell. The [petitioner] took Ms. Powell's money by searching her pockets and her bra, where she had twenty dollars. Ms. Powell believed the [petitioner] would kill her because he was unmasked, and Ms. Allen testified Ms. Powell was so frightened she "used the rest room on herself." After the [petitioner] had robbed the other women in the "hair room," he returned to Ms. Powell, who was huddled in a corner with her arms covering her head, and searched her bra again. Anita Williams, who had been in a separate room with some of the children, saw the [petitioner's] accomplice, who was masked and who did not observe her among the children, peek into the room and then close the door. She then heard the other children screaming and went into the hallway, and the [petitioner], who was not masked, pointed a pistol at her, asking for J-Mack; she dropped her purse, which he took as he fled. When

the men left the house, Ms. Allen was hyperventilating and required medical attention. At trial, the [petitioner] introduced the testimony of two alibi witnesses, his brother, Edward Richardson, and his former girlfriend, Wanda Washington. The [petitioner] also had an expert witness testify regarding the accuracy of eyewitness identifications.

The trial court sentenced the [petitioner] to twenty-five years as a Range III persistent offender for the aggravated robbery; to ten years as a Range III persistent offender for the aggravated burglary; to fourteen years as a Range III persistent offender for the aggravated assault; and to six years as a career offender for the convicted felon in possession of a handgun conviction. The trial court ordered the sentence for aggravated assault to be served consecutively to the sentence for aggravated robbery, and the remaining sentences were ordered to run concurrently with all other convictions for an effective sentence of thirty-nine years.

After his conviction, the [petitioner] appealed the sufficiency of the evidence supporting his convictions and challenged his conviction for aggravated assault on the basis that the indictment had charged that the [petitioner] did "knowingly commit an assault on PANDORA POWELL and by use of a deadly weapon, cause bodily injury," but the trial court had charged the jury with what it considered the lesser included offenses of aggravated assault by "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury" and aggravated assault by "intentionally or knowingly caus [ing] physical contact with another and a reasonable person would regard that contact as extremely offensive or provocative." The jury convicted the [petitioner] of aggravated assault "by causing the victim to reasonably fear imminent bodily injury." This Court upheld the sufficiency of the evidence but reversed the conviction for aggravated assault, concluding that the [petitioner] was convicted based on an element different from that charged in the indictment. *State v. Richardson*, 2010 WL 3791973, at * 11. Because the aggravated assault conviction was the only count which was imposed consecutively to any other count, the case was remanded "for the purpose of allowing the trial court to restructure the manner of service of the remaining sentences to include consecutive sentences, if the court deems it to be appropriate." *Id.* at *1.

On remand, the parties entered a consent order reflecting the fact that the trial court reviewed portions of the appellate record in *State v. Richardson*, 2010 WL 3791973, including the transcript of evidence,

transcript of the sentencing hearing, and the exhibits. At the May 28, 2008 sentencing hearing, the prosecution had introduced judgments for the [petitioner's] prior convictions. The exhibits reflect that the [petitioner] was convicted of: (1) reckless endangerment, a Class E felony, on February 14, 1997, in case no. 96-11837; (2) aggravated robbery, a Class B felony, on February 10, 1998, in case no. 97-07016; (3) aggravated robbery, a Class B felony, on February 10, 1998, in case no. 97-07014; (4) sale of a controlled substance (0.5 grams or more of cocaine), a Class C felony, on October 18, 1994, in case no. 94-01783; (5) attempt to commit aggravated robbery, a Class C felony, on October 18, 1994, in case no. 94-05834; (6) uttering forged paper, a Class A misdemeanor, on November 21, 1991, in case no. 90-05231; and (7) theft of property valued over $1,000, a class D felony, on October 18, 1994, in case no. 94-01933. The exhibits also show a federal conviction for felon in possession of a firearm on October 23, 2003 in case no. 2:04CR20344-01-MI. The prosecution also introduced a presentencing report that showed that the [petitioner] had held two previous jobs: as a painter/laborer with a staffing service from October 1, 2002 to June 30, 2003, and as a warehouseman from January 1, 1996 to March 1, 1997. The presentencing report also reflected several misdemeanor convictions, spanning from 1989 to 2003 and including assault and battery, reckless driving, six convictions for driving with a suspended license, marijuana possession, simple assault, harassment, public intoxication, failure to renew motor vehicle license, evading arrest, and a "weapons offense." The [petitioner's] juvenile record was also introduced into evidence; the [petitioner] had been adjudicated delinquent in Tennessee for larceny and possession of a controlled substance and in Arkansas for theft of property, breaking and entering, and attempted theft. The proof at the 2008 sentencing hearing also included the [petitioner's] testimony in mitigation. The [petitioner] testified that he was born in 1970 and that, due to an automobile accident in 1996, he had five steel rods in his right arm, as well as arthritis. The [petitioner] additionally testified that he had been shot in February 2004, and that a bullet was lodged in his chest. He testified regarding some partial paralysis he had experienced on his left side and stated that his left leg occasionally became swollen as a result. The [petitioner's] medical records corroborating his gunshot injuries were introduced at the hearing. The [petitioner] noted that his age, physical condition, and current confinement under federal law should be taken into consideration as mitigating circumstances.

At the May 19, 2011 sentencing hearing, the trial court, having reviewed the evidence previously introduced, ordered all three remaining

- 4 -

convictions to be served consecutively to one another, for an effective sentence of forty-one years. The trial court ordered the sentences to be served consecutively based on a finding that the [petitioner] had an extensive record of criminal activity, that the [petitioner] was a professional criminal, and that the [petitioner] was a dangerous offender whose behavior showed little or no regard for human life and who had no hesitation about committing a crime in which the risk to human life was high. In finding the [petitioner] a professional criminal, the trial court consulted the presentence report prepared for the original sentencing hearing, which the court found showed that the [petitioner] "only held jobs for a very minimal amount of time" and demonstrated "no normal source of income other than by committing offenses." The trial court also noted that many of the offenses involved the taking of property. In finding that the [petitioner] had an extensive record of criminal activity, the trial court likewise referred to the [petitioner's] prior convictions and the other exhibits introduced at the first sentencing hearing. The trial court further found that the circumstances surrounding the commission of the offense were aggravated, that confinement for an extended period of time was necessary to protect society, and that the aggregate length of the sentence reasonably related to the offenses for which the [petitioner] was convicted.

. . .

The trial court also noted that it took the mitigating evidence into account, including that introduced at the 2008 sentencing hearing.

*Paul Richardson*, No. W2011-01434-CCA-R3-CD, 2012 WL 2307902, at \*1-4 (Tenn. Crim. App. June 18, 2012), *perm. app. denied* (Tenn. Sept. 18, 2012). After our review, this Court upheld the consecutive sentencing imposed by the trial court. *Id.* at \*5.

The petitioner then filed a *pro se* petition for post-conviction relief, which was later amended after the appointment of counsel.[1] In his amended petition, the petitioner argues trial counsel was ineffective in that he: (1) failed to convey a twelve-year plea offer made prior to trial; (2) failed to properly investigate his case; (3) failed to object to the State's untimely filing of the notice of enhancement factors; and (4) discouraged him from testifying at trial.

---

[1]This appeal relies on the amended petition filed by the petitioner on June 30, 2016.

During the post-conviction evidentiary hearing, the petitioner testified that his trial began on March 31, 2008. At the time, trial counsel had recently represented the petitioner on an unrelated federal charge, for which he entered a guilty plea and was sentenced to one-hundred and ninety-six months in confinement.[2] The petitioner approached the state charges under this posture.

The petitioner first stated trial counsel was ineffective because he failed to object to the untimely filing of the State's notice of enhancement factors relied on during sentencing. Specifically, the petitioner explained the notice was filed on March 24, 2008, seven days before trial rather than the required ten. A copy of the notice was entered into evidence. The petitioner acknowledged the notice provided an accurate depiction of his criminal history, of which he was "very aware" prior to trial.

The remainder of the petitioner's testimony focused on his assertion that trial counsel failed to convey a twelve-year plea offer to him prior to trial. The petitioner testified that if he had been told of the settlement offer, he would have taken it. He explained he "already had sixteen and a half years in the Feds, so a twelve year deal would have been good for [him], because [he] asked [trial counsel], do I have anything on the table and he always told me no." In response, trial counsel maintained no settlement offers were made, noting his records reflected the same. Trial counsel explained if an offer had been made, he would have conveyed it to the petitioner "because [he] can't make an intelligent choice without having the information." He was unwavering in his testimony, stating, "I don't remember any offer being made. I don't remember any offer being made, I don't remember any offer being requested. I remember [the petitioner] being ready and wanting to go to trial."

However, at the evidentiary hearing, the petitioner referred to a specific colloquy at trial wherein trial counsel discussed the petitioner's position regarding potential settlement offers. The petitioner stated he was not in the courtroom when the following exchange occurred:

> [Prosecutor]: I just mentioned to [trial counsel], I don't think [the petitioner] has ever in all his varius [sic] court appearances been voir dired about his offer and rejecting it.
>
> [The Court]: Okay.

---

[2]The petitioner also explained that in 2016, prior to filing the present claims, trial counsel successfully reduced his federal sentence from one hundred and ninety-six months to ninety-two months.

[Prosecutor]: It may be that he wants to do that.

[Defense Counsel]: Your Honor, please, I've spoken with [the petitioner] about the possibility of being voir dired concerning the offer, settlement offer. He is respectfully declining that at this time.

Trial counsel explained that he did not *voir dire* the petitioner regarding settlement offers because the petitioner refused to enter into plea negotiations altogether. The prosecutor corroborated this assertion at the evidentiary hearing, stating he remembered the petitioner's "attitude during the trial, is that he did not want to cooperate, he was insistent that he didn't want to serve any more time than whatever he was going to get in Federal Court." Further, trial counsel stated, "It never occurred to me that there would be any need to build a record of him not wanting to settle the case when I had already stated on the record that we'd spoken about it and he didn't want to do it."

Additionally, in support of his claims, the petitioner introduced judgment forms filled out by the prosecutor in anticipation of trial. The judgment forms reflected proposed guilty plea offers for the petitioner, including a twelve-year offer for the aggravated robbery conviction. The forms indicate the State intended to run the guilty-plea sentences consecutively to the petitioner's "federal sentence." Absent signatures from defense counsel, the trial judge, and the petitioner, the judgment forms are complete.

The prosecutor offered his explanation for the incomplete judgment forms and the alleged settlement offers made at the time of trial. In doing so, the following discussion transpired:

[Prosecutor]: I don't remember, specifically, if we actually conveyed an offer. I saw in the jacket that my handwriting and guilty plea paperwork, which is customary if I'm going to make an offer at the state [*sic*] of the trial is, I go ahead and do the paperwork. Every time I do that, I convey it to the defense attorney. In this case I would have been interested in [the petitioner's] pleading guilty, since I no longer had [witness] cooperation. And, I can 100%, for sure, guarantee you that if I made an offer to [trial counsel], I made sure that [trial counsel] went into the back with the intention of conveying the offer.

[Post-Conviction Counsel]: So are you saying then, right before the trial, you may have made an offer, because your trial position changed?

[Prosecutor]: Absolutely.

- 7 -

[Post-Conviction Counsel]: So do you remember if you made an offer at any point prior to that trial?

[Prosecutor]: I do not remember and my assumption would be no, because [the petitioner] went from cooperating in which case he didn't need an offer, yet, to not cooperating and refusing to testify against [another defendant], in which case [the petitioner] just probably needed to be tried.

Despite the above dialogue, the prosecutor also stated:

If I made an offer on trial day, which I probably did, given the fact that I filled out the paperwork, I can tell you to a 100% certainty, I made sure that [trial counsel] went back there and I made sure that I got an answer from [trial counsel] as to whether or not he accepted it, or didn't accept it.

After its review, the post-conviction court found the petitioner failed to prove ineffective assistance of trial counsel by clear and convincing evidence. Regarding trial counsel's failure to object to the untimely notice of enhancement factors, the post-conviction court determined trial counsel was exercising "his professional judgment concerning whether to object [or] not to object," and the petitioner "failed to offer evidence to the contrary." As to the alleged twelve-year plea offer, the court noted, "[o]ther than his hearing testimony, [the] [p]etitioner offers no evidence to support his claim that his defense counsel failed to communicate defenses or strategic options to the [p]etitioner." The post-conviction court denied relief, and this appeal followed.

## ANALYSIS

On appeal, the petitioner argues trial counsel was ineffective for failing to object to the State's untimely filing of its notice of enhancement factors and failing to convey the alleged twelve-year plea offer to him prior to trial. Specifically, the petitioner claims "that [c]ounsel failed to move for a continuance or post-ponement [*sic*] of his trial as he was authorized to do [pursuant to the untimely notice], and that if [c]ounsel had done so, the [petitioner] would have accepted the offer to plead guilty made by the State." The State argues the post-conviction court properly found the petitioner failed to prove either claim by clear and convincing evidence, and as such he is not entitled to relief on appeal. Following our review of the record and submissions of the parties, we affirm the judgment of the post-conviction court.

To obtain relief in a post-conviction proceeding, a petitioner must demonstrate that his or her "conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. The post-conviction petitioner bears the burden of proving his factual allegations by clear and convincing evidence. *See* Tenn. Code Ann. § 40-30-110(f). "'Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010) (quoting *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009)).

Appellate courts do not reassess the trial court's determination of the credibility of witnesses. *Dellinger v. State*, 279 S.W.3d 282, 292 (Tenn. 2009) (citing *R.D.S. v. State*, 245 S.W.3d 356, 362 (Tenn. 2008)). Assessing the credibility of witnesses is a matter entrusted to the trial judge as the trier of fact. *R.D.S.*, 245 S.W.3d at 362 (quoting *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996)). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. *See Tidwell v. State*, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. *See Ruff v. State*, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001); *Burns v. State*, 6 S.W.3d 453, 461 (Tenn. 1999).

The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, and article I, section 9 of the Tennessee Constitution require that a criminal defendant receive effective assistance of counsel. *Cauthern v. State*, 145 S.W.3d 571, 598 (Tenn. Crim. App. 2004) (citation omitted). When a petitioner claims he received ineffective assistance of counsel, he has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). The *Strickland* standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient

performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). With regard to the standard, our supreme court has held:

> [T]he assistance of counsel required under the Sixth Amendment is counsel reasonably likely to render and rendering reasonably effective assistance. It is a violation of this standard for defense counsel to deprive a criminal defendant of a substantial defense by his own ineffectiveness or incompetence . . . Defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations.

*Finch v. State*, 226 S.W.3d 307, 315-16 (Tenn. 2007) (quoting *Baxter*, 523 S.W.2d at 934-35). When reviewing trial counsel's performance, this Court "must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's conduct, and to evaluate the conduct from the perspective of counsel at that time." *Howell v. State*, 185 S.W.3d 319, 326 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 689).

To satisfy the prejudice prong of the test, the petitioner "must establish a reasonable probability that but for counsel's errors the result of the proceeding would have been different." *Vaughn v. State*, 202 S.W.3d 106, 116 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 694). "A 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). In order for the petitioner to prevail, the deficient performance must have been of such magnitude that the petitioner was deprived of a fair trial and that the reliability of the outcome was called into question. *Finch*, 226 S.W.3d at 316.

Courts need not approach the *Strickland* test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; *see also Goad*, 938 S.W.2d at 370 (stating that "failure to prove either

- 10 -

deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

When a petitioner alleges he rejected a plea offer due to the ineffective assistance of counsel, he:

> has the burden to show by a reasonable probability that, but for counsel's deficient representation, (1) he . . . would have accepted the plea, (2) the prosecution would not have withdrawn the offer, and (3) the trial court would have accepted the terms of the offer, such that the penalty under its terms would have been less severe that the penalty actually imposed.

*Nesbit v. State*, 452 S.W.3d 779, 800-01 (Tenn. 2014) (citing *Lafler v. Cooper*, 566 U.S. 156, 164 (2012)).

Here, we conclude the record supports the post-conviction court's finding that the petitioner failed to meet his burden of proving ineffective representation. At the evidentiary hearing, trial counsel testified no settlement offers were made prior to trial, and both trial counsel and the prosecutor testified the petitioner was not interested in settling his case prior to trial. The post-conviction court found the prosecutor's testimony corroborated that of trial counsel's and held that no evidence of a twelve-year offer existed in the record. Implicit in the findings of the post-conviction court is its endorsement of trial counsel's testimony over that of the petitioner. Though we note inconsistencies in the testimony of both trial counsel and the prosecutor, we conclude nothing in the record preponderates against the post-conviction court's credibility assessment of the testimony presented at the evidentiary hearing, and we will not reevaluate the court's determination of the same. *See Tidwell*, 922 S.W.2d at 500; *Henley*, 960 S.W.2d at 578. As such, the petitioner has failed to show that trial counsel was deficient in failing to convey the alleged twelve-year plea offer.

Similarly, the petitioner has failed to show trial counsel was ineffective in failing to object to the State's untimely notice of enhancement factors. As explained above, the post-conviction court found no evidence exists in the record establishing that an offer was made prior to trial. Accordingly, the petitioner cannot now show that he "would have accepted the offer to plead guilty made by the State" if trial counsel had moved for a postponement or continuance of trial based on the untimely filing of the State's notice of enhancement factors. *See Nesbit*, 452 S.W.3d at 800-01. The record supports the post-conviction court's determination that trial counsel made a strategic decision when he failed to object to the untimely notice of enhancement factors filed by the State. *See Tidwell*, 922 S.W.2d at 500; *Henley*, 960 S.W.2d at 578. Therefore, the petitioner has

failed to show trial counsel was ineffective for failing to object to the State's untimely notice of enhancement factors, and he is not entitled to relief.

Furthermore, as to both issues, the petitioner has failed to show that trial counsel's performance prejudiced the outcome of the proceeding. *See Strickland*, 466 U.S. at 687. Again, though the petitioner testified he would have accepted the plea offer if it had been conveyed to him subsequent to a postponement or continuance of trial, the petitioner failed to offer clear and convincing evidence that the offer even existed. Accordingly, he cannot show he was prejudiced as a result. The petitioner is not entitled to post-conviction relief for his claim of ineffective assistance of counsel.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE